UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
ROBERT WATSON,                    :
                                  :
    Petitioner,                   :
                                  :
v.                                :         NO. 3:00cv1380 (WIG)
                                  :
JOHN ARMSTRONG, ET AL.,           :
                                  :
    Respondents.                  :
------------------------------------------------------

**RULING ON PETITIONER'S
APPLICATION FOR A WRIT OF HABEAS CORPUS**

The petitioner, Robert Watson, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his conviction on the charge of assault in the first degree, assault on a victim sixty or older in the second degree, robbery in the first degree, conspiracy to commit robbery in the third degree, burglary in the first degree, and conspiracy to commit burglary in the third degree. For the reasons set forth below, the amended petition will be denied.

I.    Factual Background

Based on the evidence at trial, the Connecticut Appellate Court determined that the jury could have reasonably found the following facts:

> On October 18, 1994, Hoyt Pease, eighty-five years old, drove from his home in Southington to the Fleet Bank branch office in Berlin. He withdrew $100 from the automatic teller machine (ATM). He was then approached by the [petitioner], who claimed to be lost and in need of directions to Waterbury. The [petitioner] also claimed to be having car problems. Pease gave the

1

[petitioner] directions to Interstate 84, but the [petitioner] stated that they were too confusing. Pease offered to show the [petitioner] the way to the highway and added that it would take them past his home.

Pease drove away, followed by the [petitioner]. The [petitioner] was driving a red Yugo, with distinctive wheel covers and a broad white stripe underlined in black. Several minutes later, the [petitioner] honked his horn and pulled off to the side of the road. Pease stopped his car and the [petitioner] told him that his car was overheating. Pease offered to take the [petitioner] to his home to get water to fill the radiator. The [petitioner] then followed Pease to his home.

The [petitioner] followed Pease up a long inclined driveway to the two car garage next to Pease's house. Pease filled the [petitioner's] radiator and noted that although the water was low and the engine was hot, radiator fluid was not boiling over. Patricia Pease, his seventy-six year old wife, came outside and joined the two men. She greeted the [petitioner] and observed that although the [petitioner] was polite, he looked "awful," appeared "visibly very, very nervous," was "shaking" and his eyes "didn't look right."

After filling the [petitioner's] radiator, Pease then led the [petitioner] to a road that led to Interstate 84. The [petitioner] told Pease that his car needed gasoline. When Pease observed that the gasoline gauge indicated that the [petitioner's] tank was not low, the [petitioner] claimed that the gauge was broken. Pease then led the [petitioner] to a nearby gas station, Patriot Petroleum.

John Aliberti, the gas station's owner, was repairing a car approximately twenty-five feet from the gasoline pumps and noticed the Yugo's distinctive wheel covers, one of which was damaged or broken. He also noticed that the [petitioner] had parked too far from the pumps. Randy Spaulding, an attendant, walked over to the [petitioner] to assist him, but the [petitioner] searched his pockets and instructed Spaulding not to pump any gasoline because he did not have any money. Spaulding noticed a large number of cassette tapes on the dashboard of the [petitioner's] car.

Pease waved goodbye to the [petitioner] and drove away. The

[petitioner] Spaulding "to hell with the gas" and drove away in the same direction as Pease. Pease followed the same route home and parked his car in the garage. Approximately ten minutes later, Patricia Pease returned home and parked her car in the garage, but did not close the garage door. During this time, Patricia Verderame, the Peases' neighbor, and Paul Stocking, Verderame's business partner, were in Verderame's front yard loading firewood into Stocking's truck. They both observed the Peases arrive home.

Shortly after Patricia Pease arrived home, Verderame and Stocking observed two cars drive up the Peases' driveway at excessive speeds. The first car was a small red import with white stripes along the sides. The driver was a young, dark skinned male approximately twenty-five to thirty years old. The second car was an older, tan colored compact driven by a dark skinned male neatly dressed in tan or khaki colored clothing.

Verderame and Stocking considered the arrival of the two men to be odd, but surmised that they were hired to do yard work and returned to loading firewood into Stocking's truck. Several minutes later, at approximately 4:30 p.m., Verderame and Stocking left.

At approximately the same time, Patricia Pease heard someone in the garage. She called to her husband, and the two went to the garage. As Hoyt Pease entered the garage, he was struck by a man standing to his right near a pile of firewood logs. Patricia Pease turned and charged her attacker, but was struck by a second blow and knocked to the floor. She tuned toward her husband and saw him being struck with a log of firewood by a neatly dressed, dark skinned male in brown clothing. She charged her husband's attacker, but was struck in the head with the log. The attacker then took Hoyt Pease's wallet and fled. The couple assisted each other, returning to the house to call 911.

Before Hoyt Pease was transported by ambulance to a hospital, he related his interaction with the [petitioner] that day and described the [petitioner's] car to Officer Louis Palmieri. On the basis of that information, police officers obtained the ATM surveillance videotape and obtained two still photographs from the videotape that depicted Hoyt Pease, the [petitioner] and the [petitioner's] vehicle. The following day, police officers interviewed Spaulding, Verderame and Stocking as to their observations the previous day.

On the basis of those interviews, the Southington police issued an alert for a red Yugo with a white stripe on each side.

On October 20, 1994, Officer Robert Pekrul of the Meriden police department spotted a car matching the description issued by the Southington police department. After running a computer check of the license number, Pekrul learned that the car was registered to an address at 49 Goodwill Street in Meriden and relayed that information to the Southington police. Several hours later, Detective Michael Shanley of the Southington police department and his partner arrived at 49 Goodwill Street. They observed a red Yugo with a white stripe parked at the end of the driveway. Upon further examination, Shanley noted that the car matched the descriptions given in every respect, including the large number of cassette tapes on the dashboard, as observed by Spaulding. Shanley and his partner stayed at this location and photographed the car.

Detective Craig Fournier went to Patriot Petroleum, in an effort to locate Spaulding so that he could view the car. Spaulding was not at work, but Fournier learned that Aliberti had also observed the [petitioner] and his car. Fournier then drove Aliberti to 49 Goodwill Street.

While Shanley was taking photographs, the [petitioner] came out of the house to speak to the detective. Two detectives from the Southington police department arrived with the ATM surveillance photographs. Several Meriden police officers also arrived to assist in the investigation. The [petitioner] agreed to be photographed and consented to a search of his house.

Fournier and Aliberti arrived at the house and, in part on the basis of the broken distinctive wheel cover, Aliberti positively identified the vehicle as the car that he had seen on October 18, 1994. He further identified the [petitioner] as the driver of the car. Shanley returned to Patriot Petroleum and showed photographs of the [petitioner's] car to Spaulding. Spaulding identified the car as the same make, model and color as the car he had seen on October 18, 1994. Shanley also showed Spaulding an array of six photographs of possible suspects. Spaulding selected the petitioner's photograph as being that of the driver of the car.

That same day, Shanley showed photographs of the car to

> Verderame and Stocking. Both told Shanley that the car in the photographs was very similar to the car they had seen driving up the victim's driveway.
>
> On October 21, 1994, Fournier brought Hoyt Pease to the Southington police garage to view the defendant's Yugo. Pease told Fournier that the car looked "exactly" like the one he had filled with water prior to the attack. Pease also selected the [petitioner's]s photograph from the six photograph array. Patricia Pease, while in the hospital, was subsequently shown the array of photographs. She did not select the photograph of the [petitioner].

State v. Watson, 50 Conn. App. 591, 994-98, 718 A.2d 497, 499-501 (1998).

II.     Procedural History

On September 6, 1996, in the Connecticut Superior Court for the Judicial District of New Britain-Hartford, a jury convicted the petitioner of one count of assault in the first degree, one count of assault on a victim sixty or older in the second degree, one count of robbery in the first degree, one count of conspiracy to commit robbery in the third degree, one count of burglary in the first degree, and one count of conspiracy to commit burglary in the third degree. See Connecticut General Statutes §§ 53a-59 (a)(1), 53a-8, 53a-60b (a), 53a-134 (a)(3), 53a-136, 53a-48 (a), 53a-101 (a)(2), 53a-1-3, and 53a-48 (a).[1] The court sentenced the petitioner to forty-five years of imprisonment, execution suspended after thirty-five years and followed by a five-year probationary period.

The petitioner raised two grounds in his appeal to the Connecticut Appellate Court: (1). the trial court erroneously failed to suppress eyewitness identifications of himself and his car and (2) there was insufficient evidence to convict him of two counts of assault as an accomplice. See

---

[1] The jury acquitted Watson of conspiracy to commit assault in the first degree, conspiracy to commit assault in the second degree, conspiracy to commit robbery in the first degree, and conspiracy to commit burglary in the first degree.

Watson, 50 Conn.App. at 598-604, 718 A.2d at 501-08.  On September 29, 1998, the Connecticut Appellate Court affirmed the judgment of conviction.  See id. at 607, 718 A.2d at 505.

In his petition for certification to the Connecticut Supreme Court, the petitioner raised two grounds: (1) the Connecticut Appellate Court improperly held that ordinary evidentiary rules governing the admissibility of objects apply to identification of inanimate objects rather than the constitutional standard governing eyewitness identification of persons and (2) the Connecticut Appellate Court erred in affirming the trial court's decision not to suppress the eyewitness identification of the petitioner as impermissibly suggestive.  On November 18, 1998, the Connecticut Supreme Court denied the petitioner's appeal from the Appellate Court.  See State v. Watson, 247 Conn. 939, 731 A.2d 307 (1998).  On April 5, 1999, the United States Supreme Court denied Watson's petition for a writ of certiorari.  See Watson v. Connecticut, 526 U.S. 1058 (1999).

On July 21, 2000, the petitioner filed an application for a writ of habeas corpus in this court alleging that his conviction should be overturned on the same two grounds raised on appeal to the Connecticut Appellate Court.  In a decision dated June 27, 2000, this court concluded that the petitioner had failed to raise the sufficiency of the evidence claim on appeal to the Connecticut Supreme Court and denied the writ without prejudice because the petitioner had failed to exhaust his available state remedies as to that claim.  See Watson v. Armstrong, Case no. 3:99cv1429 (JCH) (D. Conn. June 27, 2000).  The court noted that the petitioner could either refile a federal habeas action after all of his claims had been presented to the Connecticut Supreme Court or he could refile a federal habeas action containing only the first alleged ground

for relief.

The petitioner then filed the present federal habeas action on July 21, 2000, limited to the issue of whether the state trial court erred in denying his motions to suppress eyewitness identifications of both himself and his car. On February 7, 2001, the petitioner filed a petition for certification with the Connecticut Supreme Court raising the sufficiency of evidence claim. On March 30, 2001, the Connecticut Supreme Court "dismissed" the petition for certification. State v. Watson, 255 Conn. 953, 772 A.2d 153 (2001).

On May 18, 2001, the petitioner filed a motion for leave to amend his petition in this action to include the sufficiency of evidence claim. The respondents did not file an objection to the petitioner's motion. On October 30, 2001, the undersigned granted the petitioner's motion to amend in accordance with Fed.R.Civ.P. 15 (a) and the petitioner filed his amended application for a writ of habeas corpus on November 27, 2001.

III.     Standard of Review

Because the petitioner filed his habeas petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court must review the petitioner's claim under the statute's controlling standard. The AEDPA dictates that a federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254 (d)(1)(2).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the particular case."  Id.  The Court has emphasized that "an unreasonable application is different from an incorrect one."  Id. (citing Williams v. Taylor, 529 U.S. 362, 411 (2000) (holding that a federal court may not issue a writ of habeas corpus under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). The Supreme Court has cautioned that "state-court decisions that do not 'conflict' with federal law will rarely be 'unreasonable'...state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  Williams, 529 U.S. at 389.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001).

IV.   Discussion

In his second amended habeas petition, the petitioner states three separate claims in support of his underlying federal claim that his imprisonment is in violation of the Due Process

Clause of the United States Constitution. The petitioner contends that: (1) the Connecticut Appellate Court applied the wrong standard in affirming the trial court's denial of his motion to suppress the eyewitness identification of his car, (2) the Connecticut Appellate Court erred in affirming the trial court's denial of his motion to suppress the eyewitness identification of himself, and (3) the jury lacked sufficient evidence to convict him of the two counts of assault as an accomplice. The respondents assert that the Court need not reach the merits of petitioner's claims because he failed to exhaust his state remedies and he procedurally defaulted his sufficiency of the evidence claim in state court. The undersigned will consider respondents' arguments first because, if correct, the court will not need to reach the substantive merits of petitioner's claims.

    A.    Exhaustion

A prerequisite to habeas relief under §2254 is the exhaustion of all available state remedies. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement is not jurisdictional; rather, it is a matter of federal-state comity. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Comity dictates that when a state prisoner alleges that his continued confinement for a state court conviction violates federal law, state courts should have the first opportunity to review the claim and provide any necessary relief. Williams, 529 U.S. at 437.

The respondent argues that this court need not decide this case on the merits because the petitioner failed to exhaust all available state remedies as to the third claim in the amended petition. The respondent argues that the petitioner did not exhaust the sufficiency of evidence claim because he failed to raise it in his initial petition for certification to the Connecticut Supreme Court and when he raised it in a later petition for certification the Connecticut Supreme

Clause of the United States Constitution. The petitioner contends that: (1) the Connecticut Appellate Court applied the wrong standard in affirming the trial court's denial of his motion to suppress the eyewitness identification of his car, (2) the Connecticut Appellate Court erred in affirming the trial court's denial of his motion to suppress the eyewitness identification of himself, and (3) the jury lacked sufficient evidence to convict him of the two counts of assault as an accomplice. The respondents assert that the Court need not reach the merits of petitioner's claims because he failed to exhaust his state remedies and he procedurally defaulted his sufficiency of the evidence claim in state court. The undersigned will consider respondents' arguments first because, if correct, the court will not need to reach the substantive merits of petitioner's claims.

    A.    Exhaustion

A prerequisite to habeas relief under §2254 is the exhaustion of all available state remedies. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement is not jurisdictional; rather, it is a matter of federal-state comity. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Comity dictates that when a state prisoner alleges that his continued confinement for a state court conviction violates federal law, state courts should have the first opportunity to review the claim and provide any necessary relief. Williams, 529 U.S. at 437.

The respondent argues that this court need not decide this case on the merits because the petitioner failed to exhaust all available state remedies as to the third claim in the amended petition. The respondent argues that the petitioner did not exhaust the sufficiency of evidence claim because he failed to raise it in his initial petition for certification to the Connecticut Supreme Court and when he raised it in a later petition for certification the Connecticut Supreme

Court "dismissed" rather than "denied" the petition. The court concludes that the petitioner exhausted all available state court remedies as the third claim of the amended petition because he raised it in a petition for certification to the Connecticut Supreme Court.

      B.      <u>Procedural Default</u>

Relying upon the fact that the petitioner's second petition for certification was "dismissed" rather than "denied," the respondent argues that the petitioner has procedurally defaulted the sufficiency of the evidence claim in state court, and therefore, this Court need not reach the merits of the case. For the foregoing reasons, the undersigned finds that the sufficiency of evidence claim is not procedurally defaulted.

The procedural default or "independent and adequate state ground" doctrine precludes federal review of any state court decision that rests on a state law ground that is independent of the federal question and adequate to support the judgment, whether that state ground is procedural or substantive. See <u>Cox v. Miller</u>, 296 F.3d 89, 100 (2d Cir. 2002) <u>(citing Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546(1991)).

The respondent argues that the Connecticut Supreme Court dismissed the petition for certification containing the sufficiency of the evidence as untimely pursuant to <u>Connecticut Practice Book</u> § 84-4 which states that appeals "shall be filed by the petitioner within twenty days of... the date the opinion is officially released." Thus, the respondent contends that the Connecticut Supreme Court dismissed the claim via an independent and adequate state procedural rule. There is no language in the Connecticut Supreme Court's decision to suggest that the dismissal was based on procedural grounds. See <u>Harris v. Reed</u>, 489 U.S. 255, 261-62 (1989) (when state court has not "clearly and expressly state[d] that its judgment rests on state

procedural bar" federal court may review habeas claims). Moreover, the respondent has presented no evidence to demonstrate that the State opposed the petition for certification on procedural grounds. See Quirama v. Michell, 983 F.2d 12, 14 (2d Cir. 1993) (federal court should assume state court decision based on state procedural grounds when both substantive and procedural arguments raised in appellate briefs). Furthermore, the Connecticut Practice Book permits a party to file a late appeal or petition for certification. See Connecticut Practice Book § 60-2(6) (Connecticut appellate courts may "order that a party for good cause shown may file a late appeal, petition for certification, brief or any other document, unless the court lacks jurisdiction to allow the late filing.")

Considering the Connecticut Supreme Court did not clearly and expressly state that the judgment rested on a state procedural bar in this case, there is no evidence that the parties raised both procedural and substantive grounds in their appellate briefs and that both case law and practice book authority grant Connecticut appellate courts discretion to hear late appeals, the undersigned finds that the petitioner's sufficiency of evidence claim is not procedurally defaulted, and therefore turns to the merits of the petitioner's claims.

C.  Eyewitness Identification of the Petitioner

In his first claim for relief, the petitioner argues that the Connecticut Appellate Court erred in affirming the trial court's denial of his motion to suppress an eyewitness identification of him. For the reasons set forth below, the claim is denied.

The Connecticut Appellate Court determined the following additional facts were relevant to this claim:

> After the police had located the red Yugo at 49 Goodwill Street,

> Fournier went to Patriot Petroleum to get Spaulding so that he could view the car. Spaulding was not at work, but Fournier learned that Aliberti had also observed the [petitioner] and his car. Fournier then drove Aliberti to 49 Goodwill Street.
>
> While Shanley was taking photographs, the [petitioner] came out of his house to speak to the detective. Two detectives from the Southington police department arrived with the ATM surveillance photographs. Several Meriden police officers also arrived to assist in the investigation. The [petitioner] agreed to be photographed and consented to a search of his house.
>
> Fournier and Aliberti arrived at the house, and Aliberti positively identified the vehicle as the car he had seen on October 18, 1994. He further identified the [petitioner] as the driver of the car. The [petitioner] claims that Aliberti's identification was impermissibly suggestive because Aliberti was shown the red Yugo at approximately the same time that he saw the [petitioner].

Watson, 50 Conn. App. at 601, 718 A.2d at 503.

The United States Supreme Court has long disapproved of suggestive confrontations because of the increased chance of misidentification, and has further condemned unnecessarily suggestive confrontations because the increased chance of misidentification is gratuitous. See Neil v. Biggars, 409 U.S. 188 (1972). Under well-established Supreme Court decisions, an identification procedure presents no constitutional problem unless the procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. U.S., 390 U.S. 377, 384 (1968); accord Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977). Thus, the determination of whether identification evidence should be admitted at trial is made using a two prong test: 1) whether the identification procedure was unnecessarily suggestive and 2) if the procedure was unnecessarily suggestive, whether the identification was independently reliable based on the totality of the circumstances. See Manson,

432 U.S. at 114.

As an initial matter, the Connecticut Appellate Court concluded that the circumstances surrounding the identification of the petitioner by Aliberti in front of the petitioner's house did not constitute a police show-up procedure because Aliberti had been transported to the petitioner's house to identify the car and the identification of the petitioner as he walked out of the house was inadvertent. See Watson, 50 Conn. App. At 602, 718 A.2d at 503. The Appellate Court then determined that even assuming the identification of the petitioner outside his house by Aliberti was the result of a police show-up procedure, the inadvertent confrontation between Aliberti and the petitioner was not unnecessarily suggestive. The court reasoned that the "exigencies of the situation justified" the show-up procedure and "it was prudent for the police to provide Aliberti with the opportunity to identify the driver of the red Yugo while his memory was still fresh," in this case two days after the robbery Id. at 604, 718 A.2d at 504. Because the court concluded that the identification of the petitioner was not unduly suggestive, it did not reach the issue of the reliability of the identification under the totality of the circumstances. See id. The Appellate Court's conclusion that the trial court did not err in denying the motion to suppress the eyewitness identification of the petitioner by Aliberti was not contrary to or an unreasonable application of Supreme Court law and was not based on an unreasonable determination of the facts. Thus, the amended petition for writ of habeas corpus is denied on this ground.

   D.  <u>Eyewitness Identification of the Petitioner's Car</u>

The petitioner claims that the Connecticut Appellate Court's applied the improper standard in determining that the trial court did not abuse its discretion in denying his motion to

suppress the eyewitness identifications of his car.  For the reasons set forth below, that claim is denied.

The Connecticut Appellate Court determined the following additional facts were relevant to this claim:

> The [petitioner] filed a motion to suppress the photographs of the Yugo and the identification of the Yugo by Hoyt Pease, Spaulding, Stocking and Verderame. The defendant argued that the identifications should be suppressed because they were made following an impermissibly suggestive police procedure, namely, that the witnesses were shown either the car of a photograph of the car and asked if it was the same car they had observed earlier.
>
> The trial court held a hearing on the [petitioner's] motion to suppress. The [petitioner] argued that the constitutional standards governing eyewitness identification of persons should apply to eyewitness identification of inanimate objects. The trial court agreed and applied the more stringent analysis. After concluding that the identifications were not tainted by an impermissibly suggestive identification procedure, the trial court denied the [petitioner's] motion.

Watson, 50 Conn. App. at 598, 718 A.2d at 600.

The Appellate Court determined that the claim was governed by State v. Taylor, 37 Conn. App. 464, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995) which involved the eyewitness identification of a gun. In that case, the Connecticut Appellate Court held that the eyewitness identification of objects was not governed by the same constitutional standard that applied to eyewitness identifications of persons and that "ordinary rules governing the admissibility of objects" were appropriate because those rules "afforded the defendant adequate protection." See id. at 478-79, 657 A.2d at 665-66.  The Appellate Court then determined that the trial court had properly admitted the testimony and photographs of various

witnesses regarding the identity of the petitioner's car. See Watson, 50 Conn. App. at 600-01, 718 A.2d at 502. The petitioner has not identified and research has not revealed any United States Supreme Court cases requiring courts to apply the same constitutional standard to both eyewitness identifications of persons and eyewitness identifications of objects. Accordingly, the court concludes that the Connecticut Appellate Court's decision to apply ordinary evidentiary rules governing the admissibility of inanimate objects to the petitioner's car was neither contrary to or an unreasonable application of clearly established Supreme Court law and did not involve an unreasonable determination of the facts.[2] The amended petition for writ of habeas corpus is denied on this ground.

E.     Sufficiency of the Evidence

Finally, the petitioner claims that the respondent did not present sufficient evidence at trial to allow the jury to convict him of accessory to assault in the first degree and accessory to assault in the second degree. For the reasons set forth below, that claim is denied.

The Connecticut Appellate Court described this claim as follows.

> The [petitioner] claims that the evidence was insufficient to prove that (1) he was present at the victims' house at the time of the attack and (2) he shared the attacker's intent to cause physical harm.

\* \* \*

---

[2] Furthermore, a petitioner cannot obtain federal review of an error of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Id. at 67-68. In considering this claim, the Connecticut Appellate Court decided the issue of whether the trial court properly denied the petitioner's motion to suppress the identifications of his car on state law grounds. Thus, the petitioner cannot obtain federal review of that decision.

First, the jury reasonably could have found that the [petitioner] was present during the assault. The two assaults occurred between the time the house was burglarized and the time that Hoyt Pease was robbed. The jury found that the state had proven beyond a reasonable doubt that the [petitioner] and his partner burglarized the Peases' residence. Similarly, the jury found that the state had proven beyond a reasonable doubt that the [petitioner] and his partner robbed Hoyt Pease. The [petitioner] does not challenge the sufficiency of the evidence as to either the burglary or robbery convictions. It was reasonable and logical for the jury to conclude that, because the [petitioner] was present for both the burglary and the robbery, he was present for the two assaults as well.

Second, the jury reasonably could have found that the [petitioner] shared his partner's intent to cause serious physical injury. The evidence supports the inference that the defendant targeted Hoyt Pease while he was withdrawing money from the ATM. The events following, including the allegation that his car was overheating and needed gasoline, were all part of this rouse. After stopping at Patriot Petroleum because his car needed gas, the [petitioner] left the station without buying any gas and proceeded back toward the Peases' home, in an opposite direction from Interstate 84. The [petitioner] then contacted the man who drove the tan colored car and the two returned to the Peases' home with the intent to commit robbery.

Two witnesses saw the [petitioner's] car and the tan car race up the Peases' driveway. While the [petitioner's] exact physical location at the time of the burglary, assaults and robbery is not known, the jury was entitled to infer that the [petitioner] was present and that the two men acted together. The [petitioner] conspired with the second man to burglarize the Pease residence and to commit robbery. The [petitioner] was an accessory to the burglary and robbery.

At some point between the commission of the burglary and the robbery, the Peases both were struck with logs as they entered the garage. While neither saw the [petitioner] inside the garage, the jury was entitled to infer that the defendant was present and out of sight from the two victims. On the basis of those facts, the jury was entitled to infer that the [petitioner] orchestrated, encouraged, directed or authorized the actions of his partner and that the two were intent on committing the robbery by whatever means

16

necessary.

Watson, 50 Conn. App. at 606-07, 718 A.2d at 505.

[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). On habeas review, however, the federal court is not permitted to "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402, 113 S.Ct. 853 (1993). A challenge to the sufficiency of the evidence questions "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). In discussing this standard, the Supreme Court has emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review." Wright v. West, 505 U.S. 277, 296 (1992).

Viewing the evidence in the light most favorable to the prosecution, the court concludes that the State presented sufficient evidence from which a reasonable jury could find that the petitioner was present at the victims' house at the time of the attack and that he shared the attacker's intent to cause physical harm to the victims. Thus, the court cannot conclude that the Connecticut Appellate Court's determination that this evidence was sufficient to sustain convictions against the petitioner for accessory to assault in the first degree and accessory to assault in the second degree was contrary to or involved an unreasonably application of established federal law or based upon an unreasonable determination of the facts. The petition for a writ of habeas corpus is denied on this ground as well.

17

Conclusion

The Amended Petition for a Writ of Habeas Corpus [Doc. #17] is DENIED. In addition, the court determines that the petition presents no question of substance for appellate review, and that the petitioner has failed to make a "substantial showing" of denial of a federal right. See Barefoot v. Estelle, 463 U.S. 880, 893 (1983); Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990). Accordingly, a certificate of appealability will not issue. The Clerk is directed to enter judgment for the respondents and close this case.

This is not a recommended ruling. The parties consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on January 29, 2002. (See Doc. #19.)

**SO ORDERED** this 30th day of September, 2005, at Bridgeport, Connecticut.

William I. Garfinkel

William I. Garfinkel
United States Magistrate Judge